# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **Michael P. McDonough,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 16-cv-00582 (APM) |
| **Sean J. Stackley,**[1] | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Michael P. McDonough, a former officer in the United States Navy, seeks judicial review of a decision of the Board for Correction of Naval Records ("BCNR" or "Board") denying his request for reconsideration to alter his military records. Plaintiff served as a nuclear mechanic in the Navy from 2002 to 2009. After being disciplined for misconduct on a routine audit exam, he was demoted and subsequently left the Navy.

The circumstances of Plaintiff's departure from the Navy lie at the heart of this dispute. According to the Navy, after his demotion, Plaintiff voluntarily resigned. Plaintiff's military records reflect this version of events. The Navy then sought to recoup from Plaintiff certain bonus payments paid upon his enlistment and re-enlistment. According to Plaintiff, however, following his demotion, the Navy implemented a reduction in force that led to his *involuntary* removal from the Navy, rendering any collection of his bonus payments improper.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes as Defendant the acting Secretary of the Navy, Sean J. Stackley, for the former Secretary of the Navy, Raymond E. Maybus, Jr.

In August 2011, Plaintiff asked the Board to change his military records to indicate that his removal was involuntary, which would have the effect of discharging the bonus-payment debt obligation. The Board denied both Plaintiff's initial application and his request for reconsideration, leading Plaintiff to seek review in this court.

This matter is before the court on the parties' cross-motions for summary judgment. Because the Board rendered its decision by adopting an advisory opinion that does not address Plaintiff's arguments, and because the record does not reflect that the Board undertook an independent review untainted by the fundamentally flawed advisory opinion, the court finds that the Board's denial was arbitrary and capricious. Accordingly, the court denies Defendant's Motion for Summary Judgment, grants Plaintiff's Motion for Summary Judgment, and remands this matter for further consideration.

I. BACKGROUND

Plaintiff Michael P. McDonough served as a nuclear mechanic in the Navy from 2002 to 2009. Admin. Rec., ECF No. 15 [hereinafter Admin. Rec.], Pt. 1, ECF No. 15-1 [hereinafter A.R. Pt. 1], at 17–18; Admin. Rec., Pt. 2, ECF No. 15-2 [hereinafter A.R. Pt. 2], at 198–99; Admin. Rec., Pt. 4, ECF No. 15-4 [hereinafter A.R. Pt. 4], at 388–99.[2] Plaintiff received a series of bonuses upon his enlistment and reenlistment in the Navy—$12,000 in 2002; $27,304.99 in 2004; $42,373.50 in 2008; and $8,474.70 in 2009. A.R. Pt. 1 at 5, 30, 156; Admin. Rec., Pt. 5, ECF No. 15-5 [hereinafter A.R. Pt. 5], at 410. While serving as a naval officer, Plaintiff was assigned two Navy Enlistment Classification ("NEC") codes—3385 and 3377—which indicated his technical qualifications. *See* Def.'s Mot. for Summ. J, ECF No. 6, Def.'s Mem. in Supp., ECF No. 6-1

---

[2] The Administrative Record is cited in five parts. Part 1 covers pages 1–99; Part 2 covers pages 100–199; Part 3 covers pages 200–299; Part 4 covers pages 300–399; and Part 5 covers pages 400–529. All pin citations are to the Administrative Record's original pagination.

[hereinafter Def.'s Mot.], at 2–3; Pl.'s Cross-Mot. for Summ. J., ECF No. 9, Pl.'s Mem. in Supp., ECF No. 9-1 [hereinafter Pl.'s Mot.], at 1; A.R. Pt. 1 at 1, 29–30; Admin. Rec., Pt. 3, ECF No. 15-3 [hereinafter A.R. Pt. 3], at 278–280.

In 2009, Plaintiff was disciplined for misconduct on a routine audit exam, causing him to be demoted and leading his commanding officer to request that Plaintiff's classification codes be removed. Def.'s Mot. at 3–4; Pl.'s Mot. at 2; A.R. Pt. 1 at 24; A.R. Pt. 2 at 139–143, 188; A.R. Pt. 3 at 284. Plaintiff was discharged from the Navy in September 2009. A.R. Pt. 1 at 16; A.R. Pt. 2 at 198–99. His discharge papers listed the reason for his discharge as "reduction in force" and used separation code "KCC," which signifies a voluntary departure. A.R. Pt. 1 at 16, 29; A.R. Pt. 2 at 198–99; A.R. Pt. 5 at 526. Several months later, the Defense Finance and Accounting Service ("DFAS") sent Plaintiff a bill for $51,194.93—an amount representing the "unearned portion of [Plaintiff's] enlistment or reenlistment bonus." A.R. Pt. 4 at 366–67. Plaintiff requested DFAS review the debt, and the DFAS concluded the debt was valid. A.R. Pt. 1 at 81–85.

Plaintiff then turned to the Board for Correction of Naval Records ("BCNR" or "Board"). He asked the Board to modify his records to reflect that he was discharged from the Navy *involuntarily* due to a force reduction, which, if granted, would relieve him of any obligation to repay bonus funds. A.R. Pt. 1 at 1, 15, 20–22, 29–44, 82–85; A.R. Pt. 3 at 202. In response to Plaintiff's application, the Board sought an advisory opinion from the Office of the Chief of Naval Operations ("CNO"), which concluded that Plaintiff had voluntarily left the Navy and that recouping his bonus payments was proper. A.R. Pt. 1 at 28–30. Plaintiff's counsel wrote a letter to the Board, dated February 12, 2012, urging it to disregard the advisory opinion. A.R. Pt. 3 at 260–61. Relying heavily on the CNO's advisory opinion, the Board then denied Plaintiff's application. A.R. Pt. 1 at 19–23, 29–30. Plaintiff submitted a request for reconsideration

("Motion"), and the Board once again sought an advisory opinion. A.R. Pt. 2 at 123–24, 178–189. The CNO recommended denying Plaintiff's Motion. A.R. Pt. 2 at 113–15. The Board, relying on the second advisory opinion from the CNO, denied the Motion. A.R. Pt. 1 at 97–99.

The Board's denial of Plaintiff's Motion forms the basis of this lawsuit. *See* Compl., ECF No. 1 [hereinafter Compl.], ¶ 1. In sum, Plaintiff claims that the Board's decision was arbitrary and capricious—in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*—because the Board failed to consider any argument he advanced in his Motion. *See* Compl. ¶¶ 1, 75–76. The parties then filed cross-motions for summary judgment, to which the court now turns.

## II.   LEGAL STANDARD

The Secretary of the Navy is authorized to modify military records "when [he] considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552. The Navy carries out this function through the Board, which rules on petitions to correct military records. 32 C.F.R. § 723.1. A district court may review the decision of a military board of correction using "familiar principles of administrative law." *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989); *see also Piersall v. Winter*, 435 F.3d 319, 323–24 (D.C. Cir. 2006) (discussing the "well-settled rule that the decisions of boards for correction of military records are subject to review under the APA"). The court's role is limited: it must "determine only whether the Secretary's decision making process was deficient, not whether his decision was correct." *Kreis*, 866 F.2d at 1511.

In making such an evaluation, the district court owes the military board of correction's decision a heightened degree of deference. Although subject to the APA's arbitrary and capricious standard, 5 U.S.C. § 706(2)(A), courts review board decisions under an "unusually deferential" application of that standard. *Kreis*, 866 F.2d at 1514; *Cone v. Caldera*, 223 F.3d 789, 793 (D.C.

Cir. 2000). That is because an element of discretion on the part of the military board is built into the statutory section authorizing review. Indeed,

> [i]t is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act "*when he considers it necessary* to correct an error or remove an injustice," than it is if he is required to act whenever a court determines that certain objective conditions are met, *i.e.,* that there has been an error or injustice.

*Kreis*, 866 F.2d at 1514 (citation omitted). It is this additional grant of statutory authority that warrants the greater deference. Even under such a deferential standard, however, the military board must provide the district court with a "reason that [the] court can measure" against the arbitrary and capricious standard. *Id.* at 1514–15.

### III.  DISCUSSION

#### A.  Whether the Board's Decision Was Arbitrary or Capricious

Plaintiff contends that the Board's decision was arbitrary and capricious because it failed to address the arguments he made in his Motion for Reconsideration. Pl.'s Mot. at 9–13. The court agrees. Even a cursory examination of Plaintiff's filings and the Board's decisions demonstrates that, when denying Plaintiff's Motion, the Board rejected arguments that Plaintiff advanced not in the Motion itself, but in a filing that *preceded* it. In other words, the Board's denial was based on an entirely *different* set of arguments than those contained in Plaintiff's Motion. Accordingly, the Board's decision to deny reconsideration of its earlier ruling violates the APA, even under the "unusually deferential" standard afforded military boards.

The Board denied Plaintiff's Motion in a two-page letter that offers little explanation for its decision. A.R. Pt. 1 at 98–99. Indeed, the Board's analysis of the Motion's merits is only two sentences long:

> After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to

5

> establish the existence of probable material error or injustice. In making this determination, the Board substantially concurred with the comments contained in the advisory opinion.

*Id*. at 99. The CNO submitted the referenced "advisory opinion" by letter dated March 31, 2014 ("March 2014 Advisory Opinion"). *Id.* at 113–15. Because the Board's decision essentially rests on the March 2014 Advisory Opinion, this court must look to that opinion to determine whether the Board acted arbitrarily and capriciously.

### 1. The March 2014 Advisory Opinion

As a preliminary matter, the Board did nothing improper by relying on an advisory opinion to render its decision. *See Roberts v. United States*, 741 F.3d 152, 158–59 (D.C. Cir. 2014). A military board of correction may meet its obligation to provide a reasoned explanation by referring to a clearly relevant source, such as an advisory opinion. *See id.* Trouble arises, however, when a board hinges its decision in whole on an advisory opinion that does not satisfy the arbitrary and capricious standard. Here, the Board did just that. The March 2014 Advisory Opinion is arbitrary and capricious, because it very clearly addresses arguments made in an earlier set of objections raised by Plaintiff, rather than addressing the arguments Plaintiff made in his Motion. Because the advisory opinion on which the Board relied was itself arbitrary and capricious, so too was the Board's denial of Plaintiff's Motion.

Several aspects of the March 2014 Advisory Opinion demonstrate that the Board did not respond to the arguments raised in Plaintiff's Motion for Reconsideration. First, the March 2014 Advisory Opinion does not contain the case number assigned to Plaintiff's Motion—"11442-12."[3] A.R. Pt. 3 at 205. Instead, it bears the case number "09033-11," which is the case number assigned to Plaintiff's 2011 application to the Board to correct his records and cancel his purported debt.

---

[3] The "12" most likely signifies the year—2012—in which the Motion was filed.

6

*See* A.R. Pt. 1 at 31; Def.'s Mem. at 5; Pl.'s Reply in Supp. of Pl.'s Mot., ECF No. 14 [hereinafter Pl.'s Reply], at 2. The absence of the Motion's assigned case number is the first sign that something is amiss.

Second, Plaintiff's Motion is conspicuously absent from the list of documents that the author of the March 2014 Advisory Opinion considered in reaching her conclusion. A.R. Pt. 2 at 113; Pl.'s Reply at 2. That list identifies three documents: (1) Plaintiff's initial application to the Board; (2) an earlier advisory opinion prepared by the CNO, dated October 2011 ("October 2011 Advisory Opinion"), which the Board received and relied upon when denying Plaintiff's initial application; and (3) a letter from Plaintiff's counsel that pre-dates the Board's final decision, in which counsel responds to the Board's October 2011 Advisory Opinion. A.R. Pt. 1 at 20–23; A.R. Pt. 2 at 113. Plaintiff's Motion—which is attached to a letter from David Sheldon to the Board for Correction of Naval Records, dated October 17, 2012, *see* A.R. Pt. 2 at 178–189—is not mentioned. The fact that Plaintiff's Motion is absent from this list is significant evidence that the CNO never considered it.

Third, it is plain that the March 2014 Advisory Opinion only responds to arguments contained in Plaintiff's counsel's letter, dated February 12, 2012, which was sent *before* the Board rejected his initial application. Indeed, the March 2014 Advisory Opinion quotes nearly verbatim the arguments raised in the February 2012 letter before rejecting them. The chart below demonstrates the parallels.

| February 2012 Letter | March 2014 Advisory Opinion |
|---|---|
| "The sole basis for the [bonus] recoupment efforts . . . was [Plaintiff's] alleged failure to 'satisfactorily complete the designated term of enlistment for which the bonus was paid.'" A.R. Pt. 3 at 260. | "[Plaintiff's counsel] writes that the sole basis for DFAS' recoupment efforts are due to [Plaintiff's] alleged failure to 'satisfactorily complete the designated term of enlistment for which the bonus was paid.'" A.R. Pt. 2 at 113–14. |
| "As argued in the BCNR Memo, DFAS' conclusions are incorrect because, as the contracts themselves indicate, the condition relied upon by DFAS as triggering recoupment must lie within the control of the designee and PO2 McDonough was separated because of a force reduction." A.R. Pt. 3 at 261. | "Mr. Sheldon contends that DFAS' conclusions are incorrect because the contract specifies that the action which triggers recoupment must be within the control of PO2 McDonough and he was separated because of a force structure, something not within PO2 McDonough's control." A.R. Pt. 2 at 114. |
| "Further, even the Advisory Opinion's *post hoc* arguments are misguided.  They appear to focus on a factual contention that PO2 McDonough's NF NEC was removed due to a non-judicial punishment.  However the Advisory Opinion did not produce any evidence supporting its contention.  Nor did DFAS during the course of official hearing proceedings and other recoupment efforts. After several Freedom of Information Act (FOIA) requests for all documents in PO2 McDonough's file, all that has surfaced are documents suggesting that removal of PO2 McDonough's NF NEC had merely been *requested*. . . .  To date, no documents have surfaced evincing further removal processing or any actual removal." A.R. Pt. 3 at 261. | "He claims the Advisory Opinion is misguided because it focuses on the fact that PO2 McDonough's NF NEC was removed due to a JPN [non-judicial punishment]; however, no evidence was provided supporting this contention.  After several FOIA requests only documents suggesting the removal of the NEC had merely been requested and show no further removal processing or any actual removal." A.R. Pt. 2 at 114. |
| "In light of the above, the Board should disregard the [October 2011] Advisory Opinion as it has little utility under the facts of this case.  The Board should limit its consideration to the actual rationale for DFAS' recoupment efforts and refer to PO2 McDonough's BCNR Memo for arguments justifying PO2 McDonough's requested relief." A.R. Pt. 3 at 261. | "In light of this, Mr. Sheldon believes BCNR should limit its consideration to the actual rationale for DFAS' recoupment efforts and refer to [his BCNR Memo] for arguments justifying the requested relief." A.R. Pt. 2 at 114. |

Only one rational conclusion can be drawn from the textual similarities reflected in the foregoing chart: The March 2014 Advisory Opinion responds to arguments raised in Plaintiff's counsel's February 2012 letter, not in Plaintiff's Motion.

Fourth, while the March 2014 Advisory Opinion largely parrots the arguments contained in the February 2012 letter, it is entirely silent with respect to the arguments advanced in Plaintiff's Motion. Plaintiff made three arguments in his Motion: (1) the Navy did not follow proper procedures when removing Plaintiff's NEC codes, *see* A.R. Pt. 2 at 185–86; (2) the Secretary of the Navy did not authorize the DFAS to recoup Plaintiff's bonus payments, *see id.* at 186–88; and (3) it is in the interest of justice to stop efforts to collect Plaintiff's purported debt, *see id.* at 188. These arguments are nowhere referenced in the March 2014 Advisory Opinion.

Thus, both on its face and in substance, the CNO's March 2014 Advisory Opinion does not give the court any confidence that the opinion's author laid eyes on, let alone evaluated, Plaintiff's Motion. From citing the wrong case number to quoting from and paraphrasing the wrong letter, the March 2014 Advisory Opinion does not address Plaintiff's Motion. And, because the Board relied substantially on the March 2014 Advisory Opinion in its denial of Plaintiff's Motion, without adding any supplemental analysis of its own, the Board's ruling is arbitrary and capricious. *Kreis*, 866 F.2d at 1514–15.

    2.    *Defendant's Contentions*

Defendant advances various arguments to convince the court that the Board actually did consider Plaintiff's Motion on the merits. None are convincing.

First, Defendant points to the Board's summation of the evidence it considered, as listed in its denial letter. According to that letter, the "[d]ocumentary material considered by the Board consisted of [Plaintiff's] application, together with all material submitted in support thereof,

9

[Plaintiff's] naval record and applicable statutes, regulations and policies." A.R. Pt. 1 at 98. Defendant focuses on the Board's reference to Plaintiff's "application" as evidence that it fully considered Plaintiff's Motion. Def.'s Reply in Supp. of Def.'s Mot., ECF No. 12 [hereinafter Def.'s Reply], at 2. The reference to "application," however, without more, is too ambiguous a term for the court to be able to "reasonably . . . discern[]" the Board's "path" in rejecting Plaintiff's Motion. *See Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997). Indeed, the Board used the same exact sentence to describe the materials it considered when it denied Plaintiff's original request to correct records. *Compare* A.R. Pt. 1 at 20 ("Documentary material considered by the Board consisted of your application, together with all material submitted in support thereof, your naval record and applicable statutes, regulations and policies."), *with* A.R. Pt. 1 at 98 (same). The word "application," therefore, does not carry the weight that Defendant accords it.

Next, Defendant highlights a passage from the March 2014 Advisory Opinion that, it contends, shows the Board considered and rejected Plaintiff's argument for reconsideration that the Navy had not properly removed his NECs—that is, the codes identifying his status as a nuclear-trained mechanic.

> Mr. Sheldon writes the NEC removal was requested but no further processing was done. Enclosure (6), Block 11 shows the rating/NEC P02 McDonough had when he separated, MM-0000. This means he did not have his Nuclear Field NEC at separation [or] else Block 11 would have read MM-3385. The NEC removal process was completed before P02 McDonough's separation.

Def.'s Reply at 6 (quoting A.R. Pt. 2 at 115) (alteration omitted). That response, however, is clearly an answer to Plaintiff's contention in the February 2012 letter that the removal of his "[Nuclear Field] NEC had merely been *requested*. . . [and] no documents have surfaced evincing further removal processing or any actual removal." A.R. Pt. 1 at 96. On the other hand, the actual arguments Plaintiff makes in his Motion concerning the NECs removal are not addressed in the

Board's final decision.  In Plaintiff's Motion, Plaintiff argued that, under Navy rules, his nuclear NECs could be removed only if authorized by the Chief of Naval Operations ("CNO").  A.R. Pt. 2 at 185.  The CNO would then indicate his or her approval by adding a notation in Plaintiff's military record, and Plaintiff's record contained no such notation.  *Id.* at 185–86.  Neither of those specific contentions are acknowledged in the March 2014 Advisory Opinion.

Finally, Defendant claims that the Board considered Plaintiff's third argument—that the "interest of justice" warranted forgiveness of Plaintiff's debt to the Navy—because the denial letter states, "[A]fter careful consideration of your request, the Board found insufficient evidence of an error *or injustice* that would warrant the relief you sought."  Def.'s Reply at 9 (quoting A.R. Pt. 1 at 98).  That quoted portion of Board's letter, however, is taken out of context.  The quoted sentence reads, in full:  "*On 27 February 2012*, after careful consideration of your request, the Board found insufficient evidence of an error *or injustice* that would warrant the relief you sought."  A.R. Pt. 1 at 98 (emphasis added).  Thus, the quoted sentence refers not the Board's conclusion as to the Motion, but rather its denial of Plaintiff's original application for correction.[4]

\* \* \*

In summary, there is nothing within either the March 2014 Advisory Opinion or the Board's denial letter of May 16, 2014, that provides a "reason that [the] court can measure" in evaluating the Board's decision against the arbitrary and capricious standard.  *Kreis*, 866 F.2d at 1514–15.  Accordingly, even under the "unusual deference" afforded to military correction boards in this context, the Board's denial of Plaintiff's Motion does not pass muster.

---

[4] Defendant may have intended to cite a later sentence in the Board's denial letter, which reads: "After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish the existence of probable material error or injustice."  A.R. Pt. 1 at 99.  However, this generic language, which is also used in the Board's initial denial letter, *see* A.R. Pt. 1 at 20, does not enable the court to conclude that the Board considered equitable interests in the context of the other arguments Plaintiff made on reconsideration.

### B. Harmless Error

Defendant further contends that even if the Board erred by failing to consider the three arguments in Plaintiff's request for reconsideration, any such error is harmless. Def.'s Reply at 4–9. As to Plaintiff's first contention—that the Navy did not follow correct procedures in removing his NECs—Defendant asserts that other documents in the record evidence that the Navy did in fact follow the proper procedures and properly removed Plaintiff's NECs. *Id.* at 4–7. As to Plaintiff's second argument—that the Secretary of the Navy did not authorize the DFAS to recoup the debt—Defendant maintains that the record shows that DFAS was authorized to collect the debt. *Id.* at 7–8. Lastly, regarding Plaintiff's third argument—that the Board should forgive Plaintiff's error and his debt to avoid manifest injustice—Defendant responds that, given the Board's authority to "remedy error or injustice," implicit in its very denial of reconsideration is a rejection of Plaintiff's plea for leniency. *Id.* at 8–9.

In asking the court to declare any errors harmless, Defendant asks the court to do exactly what *Kreis* holds is improper—pass on the correctness of the Board's decision. *Kreis*, 866 F.2d at 1511. This court's review is limited to "whether the [Board's] decision making process was *deficient*, not whether its decision was correct." *Id.* (emphasis added). District courts thus should avoid the type of merits-based, harmless error analysis that Defendant asks the court to undertake here. *Cf. Coe v. McHugh*, 968 F. Supp. 2d 237, 241 n.2 (D.D.C. 2013) (applying harmless error rule to a board of correction decision that relied on an outdated regulation whose text in the new version had not changed). When a court does find error in the decision-making process, the better course is to remand the matter to the military correction board so that it can address any deficiencies in the first instance. *See Kreis*, 866 F.2d at 1512. That is how the court will proceed here.

## IV. CONCLUSION

For the foregoing reasons, the court denies Defendant's Motion for Summary Judgment and grants Plaintiff's Motion for Summary Judgment. The decision of the Board denying Plaintiff's request for reconsideration is remanded to the Board for further consideration.

A separate Order accompanies this Memorandum Opinion.

Dated: March 16, 2017

Amit P. Mehta
United States District Judge